# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| STEVEN L. SNIPES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:25-cv-00346 |
| v. | ) | |
| | ) | |
| PRESBYTERIAN CHURCH (USA), *et al*., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Steven L. Snipes, a resident of Murfreesboro, Tennessee, filed a pro se, in forma pauperis complaint, alleging violations of his civil rights, among other claims, based on his ancestors having provided "enslaved labor" during the construction of the Denmark Presbyterian Church. (Doc. No. 1). Plaintiff later filed an Amended Verified Complaint (Doc. No. 12) in which he abandoned his claim under 42 U.S.C. § 1983 and added a claim under 42 U.S.C. § 1981.

Plaintiff previously filed three Motions for Temporary Restraining Order ("TRO") (Doc. Nos. 6, 14, 20), which the Court denied without prejudice by Orders entered on April 3, 2025 (Doc. No. 13), April 4, 2025 (Doc. No. 14), and April 25, 2025 (Doc. No. 30), respectively.

Plaintiff now has filed a fourth TRO motion (Doc. No. 32) along with a Memorandum (Doc. No. 33) in support. His motion asks the Court to immediately freeze Defendants' "liquid assets and operational revenue", temporarily seize and preserve the Denmark Presbyterian Church property, appoint a court-supervised forensic accountant to audit Defendants' accounts, order expedited discovery, and set a hearing on the TRO motion within seven days. (Id. at PageID# 208).

1

## I. LEGAL STANDARD

In this district, a movant seeking a temporary restraining order must comply with specific procedural requirements. First, "any request for a TRO" must be made by written motion "separate from the complaint." M.D. Tenn. L.R. 65.01(a). Second, because the movant bears the burden of justifying preliminary injunctive relief on the merits, Kentucky v. U.S. ex rel. Hagel, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). Third, the motion for a TRO must be supported, at a minimum, by "an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A); M.D. Tenn. L.R. 65.01(b) (explaining that a motion for a TRO "must be accompanied by a separately filed affidavit or verified written complaint"). Finally, the moving party must certify in writing "any efforts made to give notice and why it should not be required." Fed. R. Civ. P. 65(b)(1)(B); see also M.D. Tenn. L.R. 65.01(c) (requiring "strict compliance" with this notice provision by pro se moving parties). Plaintiff has fulfilled these procedural requirements.

Under Federal Rule of Civil Procedure 65, the purpose of a temporary restraining order is to preserve the relative positions of the parties until the Court can hold an adversarial hearing for a preliminary injunction. Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974); Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 226 (6th Cir. 1996) (the purpose of injunctive relief "is to preserve the status quo so that a reasoned resolution of a dispute may be had."). When determining whether to issue a temporary restraining order, or a preliminary injunction, the Court considers four factors: (1) whether the movant has shown a strong likelihood of success on the merits of the controversy; (2) whether the movant is likely to suffer irreparable harm without an injunction; (3) whether an injunction would cause substantial harm to others; and (4) whether an injunction

would serve the public interest. Workman v. Bredesen, 486 F.3d 896, 905 (6th Cir. 2007). Although "[t]he standard for issuing a [TRO] is logically the same as for a preliminary injunction," the "emphasis [is] on irreparable harm given that the purpose of a [TRO] is to maintain the status quo." ABX Air, Inc. v. Int'l Bhd. of Teamsters, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). Both TROs and preliminary injunctions "are extraordinary remedies which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." Barron v. PGA Tour, Inc., 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (citation omitted).

## II. ANALYSIS

A.     Likelihood of Success on the Merits

Plaintiff alleges three claims, which he identifies as "Counts," in his Amended Complaint: Count 1: 13th Amendment Violation, Count 2: Fraudulent Conveyance,[1] and Count 3: 42 U.S.C. § 1981. (Doc. No. 12 at PageID# 40). Plaintiff does elaborate on his claims in his Amended Complaint, however, in his most recent TRO motion, Plaintiff contends that Defendants benefitted from "unpaid, forced enslaved labor tied to Plaintiff's ancestors" and "continued to benefit financially without having accounted for or compensated these damages." (Doc. No. 33 at PageID# 215).

The case of In re African-American Slave Descendants Litigation, 304 F. Supp.2d 1027 (N.D. Ill. 2004), is instructive. There, the court considered whether the plaintiffs, who identified as formerly enslaved African-Americans or descendants of formerly enslaved African-Americans, could obtain monetary and injunctive relief against various corporate defendants for present and past wrongs in connections with the institution of slavery. "In essence," the court

---

[1] This claim appears to be a state law claim.

explained, "the Plaintiffs seek reparations from Defendants from their alleged roles in the institution of human chattel slavery as it existed in the United States from 1619 to 1865, to date." Id. at 1043. In reviewing the defendants' motion to dismiss, the court concluded that the plaintiffs lacked standing to pursue their claims. In so concluding, the court found that a plaintiff "cannot establish a personal injury by merely identifying tort victims and alleging a genealogical relationship." Id. at 1047. Reserving the question of whether Plaintiff Snipes is able to establish Article III standing,[2] the Court next considers the political question doctrine, which appears to provide an independent basis for dismissal of at least some, if not all, of Plaintiff's claims.

It is well-established that the federal courts will not adjudicate questions that fall within the purview of the political question doctrine. See Baker v. Carr, 369 U.S. 186, 210 (1962). The court considering the African-American Slave Descendants Litigation underwent an extensive analysis of whether the issues raised in that case, many of which are analogous to Plaintiff's allegations in the instant case, fell within the purview of the political question doctrine. See 304 F. Supp.2d 1027, 1053-1063. After chronicling the history of slavery, that court found, "Because the events surrounding the Civil War are so deeply rooted in our Nation's history, the issues that may appear to be capable of judicial resolution in an ordinary case move beyond the province of

---

[2] In the context of evaluating standing, there are some distinctions between Plaintiff's claims and the claims raised by the African-American Slave Descendants. For example, the court in that case found that the plaintiffs' complaint was "devoid of any allegations that connect the specifically named Defendants or their predecessors and any of the Plaintiffs or their predecessors." 304 F. Supp.2d 1027, 1041. Snipes, however, provides a connection. Likewise, the Illinois court found that the plaintiffs' claim to economic wealth of their ancestors' labor was "conjectural" because the plaintiffs "could only speculate that their ancestors' estates would have passed on to them, and cannot say that they would have inherited their ancestors' lost pay." Id. at 1048. Snipes, however, claims a specific ownership rights to the property his ancestors built while enslaved (among other claims). Because of these and other distinctions, the Court declines to engage in a lengthy analysis of standing at this time, particularly because the applicability of the political question doctrine appears to present an independent basis for dismissal of Snipes's complaint.

this court given the magnitude of the events that preceded them." Id. at 1062. Continuing, the court found it was persuaded by the reasoning adopted by other courts that have considered the issue in the context of reparations for forced labor during World War II and have held that such claims are not suitable for judicial resolution. Id. Ultimately, the court concluded that the issues raised by the plaintiffs implicated all the factors established by the Supreme Court identifying a non-justiciable political question, thus each Baker factor provided a separate and independent basis for the court to dismiss the complaint under the well-settled political question doctrine. Id. at 1063.[3] Thus, the court held that "[t]he longstanding and well-reasoned political question doctrine bars the court from deciding the issue of slavery reparations, an issue that has been historically and constitutionally committed to the Legislative and Executive branches of our government." Id. at 1075.

Although this decision is not binding precedent, the Court finds its detailed historical and legal analysis to be instructive. Other courts have ruled similarly. See also Deutsch v. Mitsubishi Materials Corp., 317 F.3d 1005, 1028-29 (9th Cir. 2003) (where plaintiffs alleged that they were forced to work as slave laborers during World War II, affirming dismissal of slave labor claims

---

[3] The court also considered whether the plaintiff's claims, which included common law claims, state statutory claims, and federal statutory claims, were barred by the governing statutes of limitation. The court held that, "[i]f cognizable claims ever existed, those claims were owned by former slaves themselves, and became time-barred when the statutes of limitations expired in the nineteenth century." Id. at 1070. "As such," the court concluded, "Plaintiff's century-old claims are barred by the statutes of limitation in every jurisdiction." Id. The court declined to extend the statutes of limitations, found that the continuing violations doctrine did not delay accrual of the claims alleged, and found that the doctrine of equitable tolling did not apply. Id. at 1070-1074. That same analysis may apply to Snipes's claims, however, in the African-American Slave Descendants Litigation case, the court undertook the statute of limitations analysis in the context of the defendants' motion to dismiss, to which the plaintiffs had responded. Here, counsel for Defendants have only recently filed Notices of Appearance, and the statute of limitations issue has not been fully briefed. The record is not sufficiently developed to permit the Court to complete an exhaustive statute of limitations analysis at this time, as it was in the other case.

against private corporations as, inter alia, time-barred), amended by 324 F.3d 692; Wolf v. Federal Republic of Germany, 95 F.3d 536, 544 (7th Cir. 1996) (where survivor of Nazi Holocaust brought claims for wrongful failure to pay reparations, dismissing claims against private defendant on standing grounds); Kelberine v. Societe Internationale, Etc., 363 F.2d 989, 992 (U.S. App. D.C. 1966) (dismissing on justiciability and statute of limitations grounds reparations claims for World War II era slave labor against private company); In re Nazi Era Cases Against German Defendants Litig., 129 F. Supp.2d 370, 389 (D. N.J. 2001) (where plaintiffs sought recovery against Germany company and its American subsidiaries for damages resulting from plaintiff's forced labor in construction of a military airbase in Nazi Germany during World War II, dismissing slave and forced labor claims as nonjusticiable); Iwanowa v. Ford Motor Co., 67 F. Supp.2d 424 (D. N.J. 1999) (where plaintiff sued German manufacturer of motor vehicles and its American parent, seeking compensation and damages for forced labor in manufacturer's factory imposed during World War II, dismissing claims are time-barred, barred under the political question doctrine, and barred under principles of equity); Burger–Fischer v. Degussa AG, 65 F. Supp.2d 248 (D. N.J. 1999) (where class actions were brought against German corporations to recover compensation for enforced labor under Nazi regime and damages for oppressive living and working conditions, dismissing claims as barred under the political question doctrine).

In applying the first factor, the Court finds that Plaintiff has not demonstrated a strong likelihood of success on the merits of his federal claims.[4]

_____

[4] If the Court were to dismiss Plaintiff's federal claims, the Court would decide whether it would choose to exercise supplemental jurisdiction over Plaintiff's remaining state law claim. 28 U.S.C. § 1367(c)(3) provides that the district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it ha[d] original jurisdiction . . . ." Id. Any such analysis is premature at this stage of litigation.

B. <u>Irreparable Harm</u>

The second factor the Court considers is whether Plaintiff will suffer irreparable harm absent the issuance of the requested TRO. Plaintiff maintains there is an immediate risk that Defendants may transfer or conceal property, financial assets, and/or records relevant to this case. (Doc. No. 33 at PageID# 215).

The most important factor in an application for a TRO is the movant's showing of irreparable harm. <u>ABX Air, Inc. v. Internat'l Brotherhood of Teamsters, Airline Division</u>, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). To show irreparable harm, a movant must show that, absent a TRO, its interests would be damaged in ways that could not be remedied later in the legal process. <u>Southern Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.</u>, 860 F.3d 844, 852 (6th Cir. 2017). Further, the movant must show that the irreparable harm is "likely," not merely speculative. <u>Winter v. Nat'l Res. Def. Council</u>, 555 U.S. 7, 20-22 (2008); <u>Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog</u>, 945 F.2d 150, 154 (6th Cir. 1991) ("[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical.").

Plaintiff has not provided any affidavits or testimony, beyond his own, to support his claim that Defendants may transfer or conceal the property, assets, and records at issue. Moreover, the extent of irreparable harm a plaintiff must prove is inversely proportional to the probability of success on the merits he is able to demonstrate. <u>See</u> <u>Ne. Ohio Coal. For Homeless and Serv. Emps. Internat'l Union, Local 1199 v. Blackwell</u>, 467 F.3d 999, 1009 (6th Cir. 2006). Plaintiff has failed to demonstrate, at this juncture, the requisite irreparable harm for the issuance of a TRO. This failure is not inconsequential, because "[i]rreparable harm is an 'indispensable' requirement" for injunctive relief. <u>Memphis A. Philip Randolph Inst. v. Hargett</u>, 978 F.3d 378, 391 (6th Cir. 2020) (quoting <u>D.T. v. Sumner Cnty. Schs.</u>, 942 F.3d 324, 326-27 (6th Cir. 2019)).

Due to Plaintiff's failure to demonstrate a likelihood of success on the merits and due to the want of irreparable harm, the Court cannot grant the requested injunctive relief and declines to examine the remaining two factors—substantial harm to others and public interest. See Blount Pride, Inc. v. Desmond, 690 F. Supp.3d 796, 802 (E.D. Tenn. 2023) (when the court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so); Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) ("The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" (quotation omitted)); Mascio v. Pub. Emps. Ret. Sys. of Ohio, 160 F.3d 310, 315 (6th Cir. 1998) (affirming the district court's issuance of a preliminary injunction based on the district court's conclusion that the plaintiff showed a likelihood of success on the merits).

### III. CONCLUSION

Plaintiff has not shown that the circumstances clearly demand the extraordinary remedy of a TRO. See Barron, 670 F. Supp. 2d 674, 682. Accordingly, Plaintiff's Motion for a TRO (Doc. No. 32) is **DENIED**.

This case remains on referral to the Magistrate Judge.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

8