| | |
|---|---|
| STEVEN L. SNIPES,<br><br>  Plaintiff,<br><br>v.<br><br>PRESBYTERIAN CHURCH (USA), *et al.*,<br><br>  Defendants. | Case No. 3:25-cv-00346<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Luke A. Evans |

To: The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 636(b)(1)(A) & (B), this matter was referred to the Magistrate Judge for report and recommendations on dispositive motions (Doc. No. 8). Pending before the Court are the following three motions: (i) "Big Black Creek Historical Association, Inc.'s Motion to Dismiss Second Amended Complaint" (Doc. No. 99, "Black Creek's Motion to Dismiss"), (ii) "Presbyterian Church (U.S.A.), A Corporation's Motion to Dismiss Second Amended Complaint" (Doc. No. 103, "the Presbyterian Church's Motion to Dismiss), and (iii) "Plaintiff's Motion for Limited Jurisdictional Discovery" (Doc. No. 106, "Motion for Jurisdictional Discovery"). For the following reasons, it is recommended that Black Creek's Motion to Dismiss be GRANTED, the Presbyterian Church's Motion to Dismiss be GRANTED, and the Motion for Jurisdictional Discovery be DENIED AS MOOT.

## I. Background

*Pro se* plaintiff, Steven L. Snipes, "seeks redress for [his ancestors'] unpaid slave labor used to construct the Denmark Presbyterian Church [(the "Denmark Property")] in 1854" (Doc.

No. 98 at p. 1). In the course of the instant matter, Snipes filed a Complaint (Doc. No. 1), an Amended Verified Complaint (Doc. No. 12), and a Second Amended Verified Complaint (Doc. No. 98).[1] Specific to the Second Amended Complaint, Snipes pleads six claims, which he identifies as "counts," for "unjust enrichment,"[2] "constructive trust," "declaratory judgment," "fraudulent concealment,"[3] "civil rights violations,"[4] and "restitution for unpaid labor" (*Id*. at p. 4).

Regarding the Presbyterian Church (U.S.A.), A Corporation (the "Presbyterian Church"), Snipes alleges that it "has continuously benefited from, preserved, funded, and publicly presented the [Denmark P]roperty" (*Id*. at p. 2-3). In support, Snipes states that "[the Presbyterian Church] and its entities have financially benefited from [the Denmark Property] through grants, historical preservation funding, insurance-controlled valuation, tourism visibility, and ministerial representation" (*Id*. at p. 3).

With respect to Big Black Creek Historical Association, Inc. ("Black Creek"), Snipes alleges that it "owns or manages" the Denmark Property and "maintains the site as a preserved

---

[1]  Snipes adds 27 additional defendants in his Second Amended Complaint, namely: (i) Presbytery of the Mid-South, (ii) Restorative Actions Fund–Afro-American Individuals & Communities, and (iii) John and Mary Does 1-25 (Doc. No. 98 at p. 1). At this time, the Court declines to undertake any analysis with respect to the additional 27 defendants.

[2]  The Complaint and Amended Complaint frame Snipes' unjust enrichment claim as a Thirteenth Amendment violation (Doc. Nos. 1 at p. 1-2 and 12 at p. 2). Snipes' Complaint alleges that "[the Presbyterian Church and Black Creek] continue to benefit from [the Denmark P]roperty [] while denying restitution" (Doc. No. 1 at p. 2). Additionally, Snipes' Amended Complaint requests $831,154,278,647.12 in relief (Doc. No. 12 at p. 2).

[3]  The Complaint alleges that the Presbyterian Church "fraudulently transferred the Demark [Property]" to Black Creek for "$0 [] in 2021," and that such transfer was made "to hinder, delay or defraud [Snipes'] restitution claims" (Doc. No. 1 at p. 1-2). The Amended Complaint similarly reframes Snipes' fraudulent concealment claim as a "fraudulent conveyance" claim and alleges "$5M 'reduction objectives'" on behalf of the Presbyterian Church and "asset undervaluation" on behalf of Black Creek (Doc. No. 12 at p. 2).

[4]  The Complaint alleges that "[the Presbyterian Church and Black Creek] systematically denied [Snipes'] rights to justice and reparations," and frames the claim for civil rights violations under 42 U.S.C. § 1983 (Doc. No. 1 at p. 1-2).

religious and historical asset" (*Id*.). Snipes also alleges that Black Creek "acquired [the property title] through [the Presbyterian Church's] relationships" (*Id*.).

Finally, Snipes generally asserts that "[a]ll defendants jointly benefited from, controlled, preserved, insured, or publicly promoted the [Denmark P]roperty" (*Id*. at p. 2). Snipes now requests relief in the form of "monetary restitution," a "constructive trust" over the Denmark Property, and a "declaratory judgment recognizing [Snipes'] equitable interest" (*Id*. at p. 4).[5]

## II.      Legal Standard

Federal courts will not adjudicate questions that fall within the purview of the political question doctrine. *See Baker v. Carr*, 369 U.S. 186, 210 (1962). Even where the federal court would otherwise have subject matter jurisdiction, the political question doctrine restricts judicial review when exercising jurisdiction might interfere with other branches of the federal government. *Id*.; *see also United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990). "'In determining whether a question falls within (the political question) category, the appropriateness . . . of attributing finality to the action of the political departments and also the lack of satisfactory criteria for a judicial determination are dominant considerations.'" *Id*. (quoting *Coleman v. Miller*, 307 U.S. 433, 454-55 (1939)). More specifically, the Supreme Court has identified six factors:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217.

---

[5]      The Second Amended Complaint contains no requests for relief specific to Snipes' claims for unjust enrichment, fraudulent concealment, or civil rights violations (Doc. No. 98).

When any one of the foregoing *Baker* factors is implicated, the Court should refrain from adjudicating the issue. *Id*.; *see also Munoz-Flores*, 495 U.S. at 393-94.

**III.      Analysis**

Throughout Snipes' three complaints, different factual allegations against the Presbyterian Church and Black Creek, as well as legal theories for his "counts" have come and gone (Doc. Nos. 1, 12, and 98). Specific to the Second Amended Complaint, Snipes included allegations that overlapped his Complaint and Amended Complaint but omitted certain details (Doc. No. 98). This is especially true with respect to Snipes' claims for unjust enrichment, fraudulent concealment, and civil rights violations (Doc. Nos. 1 at p. 1-2, 12 at p. 2, and 98 at p. 4). Without the benefit of clarity, both Defendants as well as this Court have been stretched to make accommodations for Snipes as a *pro se* litigant. *Frengler*, 482 Fed. Appx. at 977. Even in the madness that is the litigation process, however, there must be method.

An amended pleading typically "supersedes the pleading it modifies" such that "the original pleading no longer performs any function in the case . . .". 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. and P. § 1476 (3d ed. supp. July 2023). However, considering the leniency afforded to *pro se* litigants at the pleading stage, courts have the discretion to construe amended pleadings in conjunction with past pleadings in some circumstances. *See*, *e.g.*, *Taylor-Merideth v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:16-cv-00612, 2017 WL 1164583, at *1 (M.D. Tenn. Mar. 28, 2017) (construing a *pro se* plaintiff's complaints together where plaintiff "likely did not understand that her Amended Complaint would supersede the original Complaint, and that therefore she needed to re-allege the facts entitling her [to] relief"); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Like *Taylor-Merideth*, it is apparent to the Court that Snipes likely did not understand that his Second Amended Complaint would supersede his prior complaints. *Taylor-Merideth*, 2017 WL

4

1164583, at \*1. This is especially true where Snipes' Second Amended Complaint alludes to the same core factual allegations material to his legal claims, but omits certain details included in his Complaint and Amended Complaint. *See Bawcom v. Roades*, No. 3:22-cv-00923, 2023 WL 7647313, n. 2 (M.D. Tenn. Nov. 14, 2023). Given Snipes' *pro se* status, the Court will liberally construe the pleadings together where his original allegations are necessary to understand the Second Amended Complaint, rather than require an additional amendment. *Id*.

### A. Motion to Dismiss[6]

#### 1. Federal Law Claims

The Court must first decide whether the political question doctrine is applicable. Snipes frames the instant matter as "[not] a distant historical grievance[,]" but rather an "ongoing, present-day benefit, institutional use, and financial advantage derived from property constructed through uncompensated enslaved labor" (Doc. No. 105). Snipes also states that he "does not seek legislative policy, but judicial relief grounded in established equitable principles" (*Id*.). However, Snipes fails to contend allegations specific to any ongoing financial benefit or advantage beyond his bare conclusion that there is one. Further, Snipes cannot simultaneously claim that the action is separate from "a distant historical grievance" while continuing to assert that the "uncompensated slave labor" at issue is limited to a "specific property in Tennessee [(*i.e.*, the Denmark Property),]" (Doc. Nos. 98 at p. 1 and 105).

Even if the Court were to instead construe Snipes as "rely[ing] on factual assertions concerning the effect of the 1992 conveyance, denominational governance compliance, and the extinguishment of any trust interest" (Doc. No. 101 at p. 2), rather than relying on his reparations

---

[6] Because the political question doctrine provides an independent basis for dismissal of Snipes' federal claims, the Court declines to engage in lengthy analysis of additional, proper bases for dismissal, including lack of standing, lack of personal jurisdiction, failure to state a claim, improper venue, and statute of limitations.

claim, this alone does not preclude application of the political question doctrine. The Court looks to the nature of the underlying litigation, not the specific claims enumerated. *See Renne v. Geary*, 501 U.S. 312, 316 (1991) (to determine justiciability, the court must examine the "pleadings and record to determine the nature of the dispute and the interests of the parties in having [the issue] resolved"); *see also Baker*, 369 U.S. at 217 (indicating the need for a "discriminating inquiry into the precise facts and posture of the particular case" when distinguishing between "political questions" and "political cases").

It is clear from the face of Snipes' pleadings that the underlying nature of this action seeks reparations for slave labor used to construct the Denmark Property (Doc. No. 98). Although Snipes seeks a mixed bag of monetary restitution, a constructive trust, and declaratory judgment, the bulk of that relief centers on his claim for restitution (*Id*. at p. 4). As a result, such remedies are intended to collectively provide the basis for calculating and distributing the amount of restitution sought. *See In re African-American Slave Descendants Litigation*, 304 F.Supp.2d at 105. That is, the amount in which Snipes claims that Defendants wrongfully benefitted from his ancestors' unpaid slave labor clearly raises the question as to whether the Judicial branch is best suited to resolve the issue. *Id*. As a result, the fact that Snipes reportedly "does not seek legislative policy" does not, in and of itself, preclude the Court from inquiring into the existence of a political question (Doc. No. 105). *Id*.

Next, this Court affirmatively determines that the factors enumerated in *Baker* are implicated. *Baker*, 369 U.S. at 217. While not binding precedent, the Court agrees with reasoning adopted by other courts that the issue of reparations to former slaves is exclusively committed to other branches of government. *In re African-American Slave Descendants Litigation*, 304 F.Supp.2d at 1057 (concluding that slave reparation claims were not justiciable in part because

"reparations to former slaves following the Civil War[ ] was considered and rejected by [other b]ranches"); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968) (noting that the Thirteenth Amendment gave Congress the "power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States" (internal quotations omitted)); H.R. 3745, § 2(b)(1)-(3), 101st Cong. (1989) (showing that the Reparations Study Bill continues to consider the issue of reparations to descendants of slaves, specifically the form that reparations should take if it indeed finds there to be continuing injuries to African descendants); *Cato v. United States*, 70 F.3d 1103, 1110 (9th Cir. 1995) (affirming the dismissal of plaintiffs' slavery reparations complaint on political question grounds based on Congress' desire "to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy" (internal quotations and citation omitted)); *Cf. Burger–Fischer v. DeGussa AG*, 65 F.Supp.2d 248, 282-84 (D.N.J. 1999) (concluding that courts cannot re-examine the adequacy of reparations because doing so implicates a political question in which the court must decline to determine); *Kelberine v. Societe Internationale*, 363 F.2d 989, 995 (D.C. Cir. 1966) (concluding that plaintiffs' claims for reparations against private corporate defendant were barred by political question doctrine).

To the extent Snipes requires the Court to second-guess the actions, decisions, or policies of the other branches of government, Snipes presents a political question. *In re African-American Slave Descendants Litigation*, 304 F.Supp.2d at 1057. Further, because the construction and later transfer of the Denmark Property requires resolution of facts covering a vast time period and necessarily involves unidentified non-parties, issues that may appear to be capable of judicial resolution in an ordinary case (*i.e.*, equitable remedies), beyond this Court's grasp. *Id.* at 1062. *Cf. Nazi Era Cases Against German Defendants Litig.*, 129 F.Supp.2d 370, 389 (D.N.J. 2001) (stating

that Plaintiffs' claims for reparations in the context of World War II were beyond the province of judicial determination because it would thrust the court "into the political realm")

While the question of whether something is rotten in Denmark may be appropriate for another branch of government, Snipes' pleadings implicate a political question not subject to judicial review. Accordingly, the Court recommends that the instant matter be dismissed for lack of subject matter jurisdiction.

### 2. State Law Claim

In addition to the Court's recommended dismissal of Snipes' federal claims, the Court also recommends dismissal of the remaining state law claim for fraudulent concealment. 28 U.S.C. § 1367(c)(3) (providing that the Court may decline to exercise supplemental jurisdiction over a claim if the Court has dismissed all claims over which it has original jurisdiction); *see also Ford v. Frame*, 3 Fed. Appx. 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed.").[7]

### B. Motion for Jurisdictional Discovery

Snipes filed a four-sentence Motion for Jurisdictional Discovery, which seeks discovery "necessary to determine whether jurisdiction exists" (Doc. No. 106). Because the Court has dismissed this matter for lack of subject matter jurisdiction, the Court need not reach the question of limited jurisdictional discovery for purposes of personal jurisdiction. For this reason, the Court recommends that Snipes' Motion for Jurisdictional Discovery be denied as moot (*Id.*).

---

[7]     The Court notes also that Snipes' claims for constructive trust and declaratory judgment are remedies used to enforce substantive rights, not independent sources of federal jurisdiction. *See Nolt v. Knowles*, No. 3:20-cv-00962, 2021 WL 3661243, at *5 (M.D. Tenn. Aug. 18, 2021); *see also Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).

8

**IV.     Recommendation**

For the foregoing reasons,

IT IS RECOMMENDED that Black Creek's Motion to Dismiss be GRANTED (Doc. No. 99).

IT IS FURTHER RECOMMENDED that the Presbyterian Church's Motion to Dismiss be GRANTED (Doc. No. 103).

IT IS FURTHER RECOMMENDED that the Motion for Jurisdictional Discovery be DENIED AS MOOT (Doc. No. 106).

Any party has 14 days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within 14 days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within 14 days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 24th day of April, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge

9